2008-NMCA-145

195 P.3d 365

**STATE of NEW MEXICO ex rel. CHILDREN, YOUTH AND FAMILIES DEPARTMENT, Petitioner–Appellee,**

v.

**JEREMY N., Respondent–Appellant,**

and

**In the Matter of Bryce N., a Child.**

No. 27,397.

Court of Appeals of New Mexico.

June 27, 2008.

Certiorari Denied, No. 31,238, Sept. 4, 2008.

**200**

Simon Romo, Chief Children's Court Attorney, Rebecca J. Liggett, Children's Court Attorney, Santa Fe, NM, for Appellee.

Law Offices of Nancy L. Simmons, P.C., Nancy L. Simmons, Albuquerque, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} This appeal arises out of an abuse and neglect petition filed by the Children, Youth and Families Department (Department) against Father and Mother. At the adjudicatory hearing, Mother's motion for a directed verdict was granted over Father's objection. The district court entered its judgment that Father abused child, and Father appeals, challenging only the directed verdict granted in Mother's favor. As we discuss more fully, Mother's motion was not, strictly speaking, a motion for directed verdict. Nevertheless, the district court order determined that the Department failed to produce sufficient evidence to proceed against Mother on the allegations contained in the petition. We affirm.

## PROCEDURAL BACKGROUND

{2} The petition filed by the Department alleged that Father "caused the injuries" to Child, consisting of "a lacerated liver and other injuries, including an apparent clavical [sic] fracture and a posterior rib fracture, consistent with child abuse." *See* NMSA 1978, § 32A–4–2(B)(2) (1999) (including in the definition of an "abused child" a child "who has suffered physical abuse, emotional abuse or psychological abuse inflicted or caused by the child's parent, guardian or custodian") (internal quotation marks omitted). The petition further alleged that Father subjected Child to aggravated circumstances of child abuse in that he "caused the injuries" of "blunt trauma to the abdomen" of Child's twin brother, which resulted in the twin brother's death *See* § 32A–4–2(C)(1) (defining "aggravated circumstances" to include "those circumstances in which the parent, guardian or custodian has[ ] attempted, conspired to cause or caused great bodily harm to the child or great bodily harm or death to the child's sibling") (internal quotation marks omitted). The allegation made against Mother by the petition was that Mother neglected Child in that she "did not take reasonable steps" to ensure Child was protected, nor was she "capable of ensuring [Child's] safety and well being at this time." *See* § 32A–4–2(E)(3) (stating that a "neglected child" is a child "who has been physically or sexually abused, when the child's parent, guardian or custodian knew or should have known of the abuse and failed to take reasonable steps to protect the child from further harm") (internal quotation marks omitted).

{3} At the adjudicatory hearing, Father and Mother were represented by separate counsel. The Department first attempted to change Mother's status from respondent to intervenor, but Father objected, and the district court denied the motion as untimely. After the Department completed presenting its evidence and rested, Mother moved for a directed verdict in her favor. The Department conceded that it was unable to present sufficient evidence to substantiate the allegations against Mother, and agreed that the case against Mother should be dismissed. Father objected, arguing that the motion should not be granted before he presented his evidence, that much of his evidence was inculpatory as to Mother, and that granting the motion would deprive him of the opportunity to present evidence against her. The district court nevertheless concluded, "there is insufficient evidence to proceed on the matter against [Mother]," Mother's motion was granted, and Mother was dismissed from the case. The district court then recessed, and the hearing resumed two weeks later.

{4} At the continuation of the adjudication hearing, Father offered four witnesses: his sister, his father, Mother's former best friend, and a police officer, who had interviewed Father and Mother. Father also indicated that he might call Mother as a witness, but he did not subpoena her, and he never did call her as a witness. At the conclusion of the hearing, Father was adjudicated to have abused and neglected Child, but the allegation that Father caused the death of Child's twin brother as an aggravated circumstance was dismissed. *See* NMSA 1978, § 32A–4–20(G) (2005) ("If the petition alleges that the parent, guardian or custodian has subjected the child to aggravated circumstances, then the court shall also make and record its findings on whether the aggravated circumstances have been proven.").

## DISCUSSION

{5} Father does not appeal the adjudication against him. Instead, he appeals only the district court order granting Mother's motion for a directed verdict. The Department contends that Father has no standing to contest the order granting Mother's motion. "The determination of whether a party has standing to sue is a question of law, which we review de novo." *Forest Guardians v. Powell*, 2001–NMCA–028, ¶ 5, 130 N.M. 368, 24 P.3d 803. The first element which must be satisfied before standing is present is an injury. *Id.* ¶ 16. We conclude that Father has failed to demonstrate an injury sufficient to confer standing to contest Mother's motion for a directed verdict, and we therefore affirm.

{6} Abuse and neglect proceedings are brought on behalf of children by the State through the Department. *See State ex rel. Children, Youth & Families Dep't v. Michael T.*, 2007–NMCA–163, ¶ 11, 143 N.M. 75, 172 P.3d 1287. The Department is the only entity authorized to file a petition of abuse or neglect. *See* NMSA 1978, § 32A–4–4(A), (D) (2005) (stating that upon a report of abuse or neglect, the Department is responsible for "conduct[ing] an investigation to determine the best interests of the child"); NMSA 1978, § 32A–4–15 (1993) ("A petition alleging neglect or abuse shall not be filed unless the children's court attorney has de-

termined and endorsed upon the petition that the filing of the petition is in the best interests of the child."). Father has no authority to initiate and prosecute an abuse and neglect petition, and he has no right to file a cross-claim against Mother in response to a petition filed by the Department. Stated another way, Father has no right to compel the initiation or continuation of an abuse and neglect case.

{7} We agree with the Department that the directed verdict for Mother was against the Department, and that it was based on a finding that the Department failed to present clear and convincing evidence in support of its allegation that Mother failed to protect Child. The Department is the only party against whom the directed verdict was entered, and Father cannot demonstrate he has suffered the requisite injury to acquire standing to assert on appeal that the directed verdict was erroneous. Nevertheless, Father attempts to persuade us he has suffered the requisite injury to confer standing for three different reasons.

{8} First, Father argues that Section 32A–4–20(G) was violated by granting Mother's directed verdict before Father was able to present evidence, which was potentially "inculpatory" as to Mother. Father asserts that the "inculpatory" evidence was to the effect that Mother, not Father, abused Child. Section 32A–4–20(G) of the Children's Code provides:

> The court shall determine if the allegations of the petition are admitted or denied. If the allegations are denied, the court shall proceed to hear evidence on the petition. The court, after hearing all of the evidence bearing on the allegations of neglect or abuse, shall make and record its findings on whether the child is a neglected child, an abused child or both.

Father asserts that this statute does not limit the district court to considering only the evidence that the Department presents, and that by granting Mother's motion for a directed verdict before all the evidence, including Father's, was presented, the district court did not consider "all" the evidence. Father further asserts that the "best inter-

ests of the child" fell to "second place" when Mother was granted the directed verdict before Father presented his evidence in contravention of the statutory mandate that under the Children's Code, "[t]he child's health and safety shall be the paramount concern." NMSA 1978, § 32A–1–3(A) (1999).

{9} We disagree with Father's reading of Section 32A–4–20(G). The petition made an allegation of neglect or abuse against Father and it made a separate allegation against Mother. The allegation against Father was that he physically abused Child. Separately and distinctly, the allegation against Mother was that she neglected Child in that she failed to protect Child from Father's abuse. The question raised before the district court by Mother's motion for a directed verdict was whether the Department presented clear and convincing evidence that Mother knew or should have known about Father's abuse and failed to take reasonable steps to protect Child. *See* § 32A–4–2(E)(3) (stating that a "neglected child" is a child "who has been physically or sexually abused, when the child's parent, guardian or custodian knew or should have known of the abuse and failed to take reasonable steps to protect the child from further harm") (internal quotation marks omitted). Father's "inculpatory" evidence that Mother, rather than Father, allegedly abused Child neither proves nor disproves the allegation made against Mother. We therefore reject Father's argument that Section 32A–4–20(G) was violated.

{10} We also reject Father's argument that the "best interests of the child" fell to "second place." Again, Father's argument is based on the contention that he intended to present evidence inculpatory to Mother as to the injuries inflicted on Child. As we have stated, the allegation against Mother was based on neglect, and the evidence that Father was to offer against Mother does not relate to the allegation of neglect. Accordingly, Father's argument fails.

■ {11} Second, Father attempts to demonstrate standing by arguing that entry of the directed verdict in Mother's favor resulted in a violation of his procedural due process rights. To be sure, a parent is entitled to procedural due process in abuse and

neglect proceedings, and in determining whether procedural due process was violated, our review is de novo. *See State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004–NMCA–083, ¶¶ 36–37, 136 N.M. 53, 94 P.3d 796 (recognizing that a parent is entitled to due process in abuse and neglect proceedings under *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and that a de novo standard of review is employed on appeal to determine if due process was violated). Since the interests of Father in raising Child and in Child's safety are compelling, and the State's interests in preserving and promoting the welfare of Child are equally compelling, the question before us is whether the procedure followed in granting Mother's motion for a directed verdict increased the risk of an erroneous deprivation of Father's interests and whether an additional or substitute procedure would have eliminated or reduced that risk. *Id.* ¶ 37. Father was not deprived of procedural due process under this standard.

■ {12} Father was given a full and fair opportunity to present evidence in support of his contention that it was Mother and not he who physically abused Child. Had his evidence been believed, it would have completely exonerated him of the allegations made against him in the petition. Father points to a single instance in which his evidence was rejected. The evidence, offered through Father's own father, was that following the death of Child's twin brother, Mother stated to a nurse and the testifying father that she may have injured the twin brother by tossing him in the air very roughly, repeatedly. The district court excluded the evidence as hearsay. Father argues that had Mother remained a party, the evidence would have been admissible. *See* Rule 11–801(D)(2)(a) NMRA ("A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . the party's own statement, in either an individual or a representative capacity[.]"). This argument fails to recognize that Mother and Father were not "party-opponents"; they were co-respondents against whom separate allegations of abuse and neglect were made. The "party-opponents" were the Department and Father on the one hand and

the Department and Mother on the other hand. The statement therefore would not have been admissible as the statement of a party opponent even if Mother remained a respondent while Father was presenting his evidence. *See Wilson v. Galt*, 100 N.M. 227, 236, 668 P.2d 1104, 1113 (Ct.App.1983) (stating that statements of a party-opponent "apply to and bind the party making the admission, not the adverse co-defendants"); *State ex rel. Children, Youth & Families Dep't v. George F.*, 1998–NMCA–119, ¶ 18 n. 2, 125 N.M. 597, 964 P.2d 158 ("[S]ocial workers would not necessarily be parties to a lawsuit against the Department, and thus, their statements would not necessarily be treated as admissions by party opponents."). Furthermore, the rejected evidence related to the death of Child's brother, and Father was exonerated from that allegation of the petition. He was not therefore prejudiced by its exclusion.

{13} Finally, Father asserts that because there was some evidence presented by the Department from which it could be inferred that Mother could have inflicted physical abuse on Child, the district court erred as a matter of law in granting Mother a directed verdict. Father's argument misapprehends the nature of the motion that the district court granted.

{14} We have referred to the motion granted Mother throughout this opinion as a motion for directed verdict. However, the motion was not, strictly speaking, a motion for directed verdict because in abuse and neglect proceedings, the judge is the fact finder, rather than a jury. Section 32A–4–20(G) (providing that the court makes and records its findings on whether the child is a neglected child, abused child, or both). Mother's motion was therefore granted pursuant to Rule 1–041(B) NMRA of the Rules of Civil Procedure for the District Courts. In pertinent part, the rule provides:

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

*Id.* In *Padilla v. RRA, Inc.*, 1997–NMCA–104, ¶ 17, 124 N.M. 111, 946 P.2d 1122, we explained the difference between a motion for a directed verdict when a jury is the fact finder and a motion for dismissal when the judge is the fact finder:

A Rule 1–041(B) motion in a non-jury trial must be distinguished from a motion for directed verdict pursuant to Rule 1–050(A) NMRA [in a jury trial]. A motion for a directed verdict should be granted only when all reasonable minds would agree that the plaintiff had failed to prove facts necessary to support a favorable judgment. In ruling on a Rule 1–041(B) motion, on the other hand, the trial judge acts as a fact finder who weighs the evidence and passes judgment on whether the plaintiff has proved the necessary facts to warrant the relief asked. Accordingly, we will sustain the grant of a Rule 1–041(B) motion even if the plaintiff has produced enough evidence to withstand a directed verdict under Rule 1–050(A), so long as the decision of the trial judge is rationally based on the evidence. Because Rule 1–041(B) leaves the fact finding to the trial judge, we must view the evidence in the light most favorable to support the findings and judgments of the trial judge.

*Id.* (citations, internal quotation marks, and brackets omitted). Again, the allegation against Mother was that she failed to protect Child from Father's abuse. The district judge heard all of the Department's evidence concerning its allegation, and the court was entitled to determine, under the foregoing standard, that the Department failed to present clear and convincing evidence that Mother knew or should have known about Father's abuse and that she failed to take reasonable steps to protect Child. Father's argument that there was some slight evi-

dence that would be sufficient to withstand a motion for a directed verdict in a jury case is unavailing in this case where there was no jury and the district judge was the fact finder.

{15} Father has failed to show injury justifying standing to challenge the entry of a directed verdict in Mother's favor. Father lacks standing to challenge the directed verdict, and the judgment of the district court is affirmed.

## CONCLUSION

{16} Affirmed.

{17} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and CELIA FOY CASTILLO, Judges.